UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JOE HAND PROMOTIONS, INC.,

    Plaintiff,

v.                                                       Case No. 8:19-cv-652-T-60CPT

JOHNNY G'S LLC,

    Defendant.
_____/

## REPORT AND RECOMMENDATION

This cause is before me on referral for consideration of *Plaintiff's Motion for Default Judgment.* (Doc. 41). For the reasons discussed below, I respectfully recommend that the Plaintiff's motion be granted in part and denied in part.

I.

Plaintiff Joe Hand Promotions, Inc. (Joe Hand) initiated this action in early March 2019 against Defendants Johnny G's LLC (Johnny G's) and its owner/operator, John R. Gardner. (Doc. 1). In its complaint, Joe Hand alleges that it had the exclusive right to commercially distribute the audiovisual presentation of the Floyd Mayweather, Jr. vs. Conor McGregor boxing match, which occurred on August 26, 2017 (the Program). *Id.* at 2. Joe Hand further avers that it provided access to the Program via pay-per-view to establishments in exchange for a commercial license

fee.  *Id.* at 3.  According to Joe Hand, rather than pay the license fee, the Defendants circumvented the commercial licensing requirement and unlawfully obtained access to the Program either by paying an individual, non-commercial license fee or through an unauthorized cable signal, satellite signal, and/or internet stream.  *Id.* at 3-4.  Joe Hand also claims that the Defendants then exhibited the Program at their commercial establishment, Johnny G's Bar in Lakeland, Florida, without proper authorization.  *Id.*  As the exclusive licensee and copyright assignee of the Program, Joe Hand asserts two counts in its complaint: (1) satellite and/or cable piracy in violation of the Communications Act of 1934, as amended (Communications Act or the Act), 47 U.S.C. §§ 553 and 605; and (2) copyright infringement in violation of the Copyright Act, 17 U.S.C. § 101.  *Id.* at 4-7.  As for relief, Joe Hand seeks statutory damages, attorneys' fees, and costs.  *Id.* at 7.

Upon the filing of Joe Hand's complaint, the Clerk of Court issued summonses to both Defendants (Doc. 7), and Joe Hand subsequently served Johnny G's with a copy of the summons and complaint in April 2019 (Doc. 11).  When Johnny G's failed to respond to the complaint, Joe Hand sought and obtained a Clerk's default against the establishment in October 2019.  (Docs. 26, 27).  Joe Hand was unable to effectuate service on Gardner, however, and voluntarily dismissed him from the action in July 2020.  (Doc. 40).

Joe Hand now moves for the entry of a default judgment against Johnny G's on its Communications Act claims and asks that the Court award it monetary damages totaling $23,301.80. (Doc. 41).[1] In support of this request, Joe Hand submits the declaration of its attorney, Brian T. Giles; the affidavit of its President, Joe Hand, Jr.; and the affidavit of a Johnny G's patron from the night of the Mayweather-McGregor fight. (Docs. 41-2 – 41-9).

Despite being served with a copy of Joe Hand's motion, Johnny G's has not responded or otherwise appeared in this case, and the time for doing so has elapsed. The matter is therefore ripe for resolution.

II.

Federal Rule of Civil Procedure 55(a) provides that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). Once a Clerk's default has been entered, a plaintiff may apply for a default judgment to either the Clerk or the Court. Fed. R. Civ. P. 55(b). Before granting a default judgment, however, a court must "ensure that it has jurisdiction over the claims and parties." *Sec. and Exch. Comm'n v. Martin*, 2019 WL 1649948, at *2 (M.D. Fla. Apr. 1, 2019), *report and recommendation adopted*, 2019 WL 1643203 (M.D. Fla. Apr. 16, 2019); *see also Sys. Pipe & Supply, Inc. v. M/V Viktor Kurnatovskiy*, 242 F.3d 322, 324 (5th Cir. 2001) ("[W]hen entry of judgment is sought

---

[1] Joe Hand does not seek relief on its copyright claim alleged in Count 2. *See id.* at 5, n.1.

against a party who has failed to plead or otherwise defend, the district court has an affirmative duty to look into its jurisdiction both over the subject matter and the parties.") (quotation omitted).

Once jurisdiction is established, the Court may enter default judgment if "there is 'a sufficient basis in the pleadings for the judgment entered.'" *Surtain v. Hamlin Terrace Found.*, 789 F.3d 1239, 1245 (11th Cir. 2015) (per curiam) (quoting *Nishimatsu Constr. Co., Ltd. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)). The burden on the movant in this context is similar to the one borne by a party seeking to survive a motion to dismiss for failure to state a claim. *Graveling v. Castle Mortg. Co.*, 631 F. App'x 690, 698 (11th Cir. 2015) (per curiam) (citing *Surtain*, 789 F.3d at 1245); *see also Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1370 n.41 (11th Cir. 1997) ("[A] default judgment cannot stand on a complaint that fails to state a claim."). Thus, a court looks to see whether the complaint contains adequate factual averments, which—if accepted as true—state "a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). In conducting this analysis, the court deems the defaulted defendant to have admitted the plaintiff's "well-pleaded allegations of fact" but not the plaintiff's stated conclusions of law. *Cotton v. Mass. Mut. Life Ins. Co.*, 402 F.3d 1267, 1278 (11th Cir. 2005) (internal alteration and quotation omitted).

If a claim for liability is properly pleaded, the court must then assess its ability to measure damages. To this end, the "court has an obligation to assure that there is a legitimate basis for any damage award it enters." *Anheuser-Busch, Inc. v. Philpot*, 317

F.3d 1264, 1266 (11th Cir. 2003); *see also Adolph Coors Co. v. Movement Against Racism & the Klan*, 777 F.2d 1538, 1544 (11th Cir. 1985) (explaining that damages may be awarded on default judgment only if the record adequately reflects the basis for award). "Rather than merely *telling* the Court in summary fashion what its damages are, a plaintiff seeking default judgment must *show* the Court what those damages are, how they are calculated, and where they come from." *PNCEF, LLC v. Hendricks Bldg. Supply LLC*, 740 F. Supp. 2d 1287, 1294 (S.D. Ala. 2010).

If warranted, the court may conduct an evidentiary hearing on the damages issue. Fed. R. Civ. P. 55(b)(2)(B). Such a hearing is "not a *per se* requirement," however, and is not mandated where the sought-after damages constitute a liquidated sum, are capable of mathematic calculation, or "where all essential evidence is already of record." *S.E.C. v. Smyth*, 420 F.3d 1225, 1232, n.13 (11th Cir. 2005) (citing *S.E.C. v. First Fin. Group of Tex., Inc.*, 659 F.2d 660, 669 (5th Cir. 1981)).

Each of these considerations—jurisdiction, liability, and damages—is addressed in turn below.

### III.

### A.

Beginning with subject-matter jurisdiction, it is clear that the Court has federal-question jurisdiction over Joe Hand's Communications Act claims alleged in Count 1. 28 U.S.C. § 1331 (conferring original jurisdiction for "all civil actions arising under the Constitution, laws, or treaties of the United States"); *J & J Sports Prods., Inc. v. Flame Bar & Grill, LLC*, 2018 WL 5283447, at *2 (S.D. Ga. Oct. 24, 2018) ("Because

Plaintiff's [Communications Act] claims arise under federal law, the Court has federal question jurisdiction under 28 U.S.C. § 1331.").

The Court likewise has personal jurisdiction over Johnny G's. As alleged in the complaint, Johnny G's is a registered Florida limited liability company with its principal place of business in Lakeland (Doc. 41-5 at 2) and operates Johnny G's Bar in Lakeland (Doc. 1 at 2) as well. Further, the return of service on file indicates that the summons and complaint were served on April 16, 2019, on a Johnny G's employee authorized to accept such service at the company's principal place of business. (Doc. 11).

As a result, the Court has jurisdiction over both Johnny G's and the Communications Act claims alleged in Count 1.

B.

Turning to the issue of liability, as noted above, the Communications Act claims are for cable piracy pursuant to section 553 and satellite (radio) piracy pursuant to section 605. *See* 47 U.S.C. §§ 553, 605. Section 553 of the Act provides: "No person shall intercept or receive or assist in intercepting or receiving any communications service offered over a cable system, unless specifically authorized to do so by a cable operator or as may otherwise be specifically authorized by law." *Id.* at § 553(a)(1). Section 605 states: "No person not being authorized by the sender shall intercept any radio communication and divulge or publish the existence, contents,

substance, purport, effect, or meaning of such intercepted communication to any person." *Id.* at § 605(a).[2]

A plaintiff seeking to prevail on a piracy claim under either section 553 or section 605 must "prove the following common elements: that [the d]efendant[ ] (1) intercepted or received the Program, (2) did not pay for the right to receive or to exhibit the Program, and (3) displayed the Program to patrons of its commercial establishment." *Joe Hand Promotions, Inc. v. Roussell*, 2019 WL 5273962, at *2 (N.D. Ga. Jan. 30, 2019) (citations omitted). In its complaint, Joe Hand alleges, *inter alia*, that Johnny G's intercepted the transmission of the Program via cable and/or satellite signal by either purchasing a non-commercial use license, using a residential signal instead of one for commercial use, or violating the terms of its television service provider agreement. (Doc. 1 at ¶¶ 12-14, 19). Joe Hand also avers that Johnny G's received the Program either for free or at a nominal cost knowing that receipt and exhibition of the Program was not authorized. *Id.* at ¶ 14. Joe Hand further alleges that Johnny G's broadcasted the Program at its bar without a proper license in order to attract customers and to benefit itself financially. *Id.* at ¶¶ 15-16. By way of these well-pleaded factual allegations, all of which are deemed admitted in light of the default entered against Johnny G's, Joe Hand set forth a sufficient legal basis for liability on its section 553 and section 605 claims.

---

[2] The distinctions between sections 553 and 605 are immaterial for purposes of ruling on the instant motion because, as discussed below, Joe Hand adequately pleads a claim under either provision and seeks damages allowable under both.

C.

Where, as here, a defendant is liable under both sections 553 and 605 of the Communications Act, a "plaintiff may recover damages under only one of those sections." *Joe Hand Promotions, Inc. v. Prevot*, 2019 WL 4694530, at *2 (M.D. Fla. Sept. 26, 2019) (citing *Joe Hand Promotions, Inc. v. Martinez*, 2019 WL 3082582, at *3 (N.D. Ala. July 15, 2019)). In this case, Joe Hand has elected to pursue damages under section 605, which permits the recovery of statutory damages, enhanced statutory damages, attorneys' fees, and costs. 47 U.S.C. § 605(e)(3)(B), (C).[3] As detailed below, these damages are for a sum certain subject to easy calculation and are supported by the sworn statements submitted by Joe Hand. (Doc. 41). Accordingly, no evidentiary hearing on the issue of damages is required. *See also Clough v. McClure Constr. Co., LLC*, 2019 WL 1559661, at *2 (M.D. Fla. Mar. 25, 2019) ("A plaintiff may establish his or her damages by affidavit.") (citing *Adolph Coors*, 777 F.2d at 1544), *report and recommendation adopted sub nom. Clough v. McClure Constr. Co, LLC*, 2019 WL 1558667 (M.D. Fla. Apr. 10, 2019).

1. Statutory Damages

Section 605 of the Act allows a plaintiff who establishes a violation of that provision to recover not less than $1,000 but not more than $10,000 for each violation,

---

[3] These damages are also recoverable under section 553. *See Roussell*, 2019 WL 5273962, at *3 ("Sections 553 and 605 both authorize a district court to award actual or statutory damages, enhanced damages (if the violation was willful), and reasonable attorney's fees and costs."); 47 U.S.C. § 553(c)(2) ("The court . . . may award damages described in [47 U.S.C. § 553(c)(3)]; and . . . direct the recovery of full costs, including awarding reasonable attorneys' fees to an aggrieved party who prevails.").

as the Court considers just. 47 U.S.C. § 605(e)(3)(C)(i)(II) ("[T]he party aggrieved may recover an award of statutory damages for each violation of subsection (a) involved in the action in a sum of not less than $1,000 or more than $10,000, as the court considers just."). Here, Joe Hand requests that it be awarded $5,200 in statutory damages on the grounds that, as set forth in Joe Hand, Jr.'s affidavit, Johnny G's would have paid that sum to obtain a legal licensing fee for a venue of its size. (Doc. 41-6 at 2-3; Doc. 41-7). I find this figure to be adequately supported, within the statutorily-allowable rate, and just under the circumstances.[4]

## 2. *Enhanced Statutory Damages*

Section 605 of the Act additionally authorizes the court, in its discretion, to increase an award of statutory damages "by an amount of not more than $100,000 for each violation," where "the court finds that the violation was committed willfully and for purposes of direct or indirect commercial advantage or private financial gain." 47 U.S.C. § 605(e)(3)(C)(ii). Relying on this provision, Joe Hand seeks enhanced statutory damages in the amount of $15,600, which is three times the damages sum it requests above under section 605(e)(3)(C)(i)(II).

By virtue of the default entered against it, Johnny G's has admitted that the illegal broadcast of the Program in its establishment was willful and committed for direct or indirect commercial or private gain so as to warrant these enhanced damages.

---

[4] This $5,200 statutory damages amount is also appropriate pursuant to section 553, which provides that a court may grant statutory damages between $250 and $10,000 per violation. 47 U.S.C. § 553(c)(3)(A)(ii).

In instances such as this, courts have routinely awarded treble damages of the base statutory amount predicated on the rationale that such a figure strikes the proper balance between deterring future piracy and not driving small companies out of business. *See, e.g., Joe Hand Promotions, Inc. v. Guevara*, 2020 WL 3288029, at *4 (M.D. Fla. June 18, 2020); *Prevot*, 2019 WL 4694530, at *3; *Zuffa, LLC v. Al-Shaikh*, 2011 WL 1539878, at *9 (S.D. Ala. Apr. 21, 2011) (collecting cases); *J & J Sports Prods., Inc. v. Arboleda*, 2009 WL 3490859, at *7 (M.D. Fla. Oct. 27, 2009); *Kingvision Pay-Per-View Corp., LTD. v. Wright*, 2006 WL 4756450, at *3 (M.D. Fla. Oct. 27, 2006).

In accordance with the reasoning of these courts, I find that that trebled amount Joe Hand seeks here is fair and appropriate given the nature of the illicit conduct at issue and the fact this is Johnny G's first known violation of section 605.[5]

### 3. Attorneys' Fees

In addition to the above damages, Joe Hand requests $1,500 in attorneys' fees under the Act. In support of this request, Joe Hand's counsel, Giles, represents in his declaration that his billable hourly rate for anti-piracy litigation is $250 and that he spent approximately six hours on this case. (Doc. 41-2 at 2).

The first step in assessing whether a sought-after fee amount is reasonable is to calculate the "lodestar," which is the product of the reasonable hours expended times

---

[5] This amount is again likewise permitted under section 553. 47 U.S.C. § 553(c)(3)(B) ("In any case in which the court finds that the violation was committed willfully and for purposes of commercial advantage or private financial gain, the court in its discretion may increase the award of damages, whether actual or statutory under subparagraph (A), by an amount of not more than $50,000.").

a reasonable hourly rate. *Padurjan v. Aventura Limousine & Transp. Serv., Inc.*, 441 F. App'x 684, 686 (11th Cir. 2011) (per curiam) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)); *see also Am. Civil Liberties Union v. Barnes*, 168 F.3d 423, 427 (11th Cir. 1999). In evaluating the reasonableness of the hours spent on a matter, courts exclude "excessive, redundant, or otherwise unnecessary" hours an attorney could not appropriately bill the client or opposing counsel in the exercise of good billing judgment. *Norman v. Housing Auth. of City of Montgomery*, 836 F.2d 1292, 1301 (11th Cir. 1988) (quoting *Hensley*, 461 U.S. at 434 & 437). To determine what is a reasonable hourly rate, the courts look to "the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Duckworth v. Whisenant*, 97 F.3d 1393, 1396 (11th Cir. 1996) (quoting *Norman*, 836 F.2d at 1299).

Once the lodestar has been calculated, courts are permitted to make adjustments "as necessary" given the particular circumstances presented. *Padurjan*, 441 F. App'x at 686 (quoting *Blum v. Stenson,* 465 U.S. 886, 888 (1984)). Such adjustments may account for whether the results obtained were exceptional, excellent, or of partial or limited success. *Norman*, 836 F.2d at 1302.

In this case, Giles did not include an itemization of the hours he expended, I find the six hours he claims to have devoted to the litigation to be reasonable based upon my review of the record. As evidenced by the docket sheet, Giles prepared the complaint, reviewed and responded to incoming Court orders, and drafted a notice of settlement, a motion to reopen the case, a motion for a Clerk's default, and the instant

motion for a default judgment. In my estimation, six hours spent conducting these tasks and pursuing this action is well within reason. Furthermore, Giles's requested hourly rate accords with the rates charged for similar cases in this community and has been approved by numerous courts in this District. *See, e.g., Guevara*, 2020 WL 3288029, at *5; *Joe Hand Promotions, Inc. v. Mortimer*, 2020 WL 2366738, at *4 (M.D. Fla. Apr. 24, 2020), *report and recommendation adopted*, 2020 WL 2330233 (M.D. Fla. May 11, 2020); *Joe Hand Promotions, Inc. v. Rene*, 2020 WL 3000195, at *4 (M.D. Fla. Jan. 9, 2020), *report and recommendation adopted,* 2020 WL 2999385 (M.D. Fla. Jan. 29, 2020); *Prevot*, 2019 WL 4694530, at *3. Accordingly, I find that Joe Hand's request for $1,500 in attorneys' fees is reasonable.

### 4.  Costs

With respect to costs, Giles attests that Joe Hand spent $400 on the filing fee to initiate this action and $501.80 in effectuating service on Johnny G's. (Doc. 41-2 at 2). While the $400 filing fee is fully taxable as "fees of the clerk" under 28 U.S.C. § 1920(1), the service of process fee is only recoverable at a reduced amount. I note in this regard that Joe Hand does not provide any underlying invoice or documentation to support its claim that service of process upon a single defendant—Johnny G's—cost more than $500. And, while private process server fees are generally taxable under 28 U.S.C. § 1920(1), such fees ordinarily may not exceed the statutory limit set forth in 28 U.S.C. § 1921, which is the allowable rate assessed by the United States Marshal's Service. *Beach Mathura v. Am. Airlines, Inc.*, 571 F. App'x 810, 812-13 (11th Cir. 2014) (per curiam) (reversing district court award for service of

process fees that exceeded the allowable rate under section 1921); *U.S. Equal Emp't Opportunity Comm'n v. W&O, Inc.*, 213 F.3d 600, 624 (11th Cir. 2000). The Marshals are currently authorized to charge $65 per hour for each item personally served, plus travel costs and other out-of-pocket expenses. 28 C.F.R. § 0.114(a)(3). As a result, I find that the costs relating to serving process on Johnny G's should be limited to $65.

IV.

In light of the above, I recommend that the Court:

1. Grant in part and deny in part *Plaintiff's Motion for Default Judgment* (Doc. 41).

2. Find that Joe Hand is entitled to a default judgment against Johnny G's on Count 1 of its complaint in the amount of $22,765.[6]

3. Direct the Clerk of Court to enter Final Judgment in accordance with Paragraph 2 and to thereafter close the case.

Respectfully submitted this 13th day of November 2020.

HONORABLE CHRISTOPHER P. TUITE
United States Magistrate Judge

---

[6] This amount is comprised of $5,200 in statutory damages, $15,600 in enhanced statutory damages, $1,500 in attorneys' fees, and $465 in costs.

13

## **NOTICE TO PARTIES**

A party has fourteen (14) days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections, or to move for an extension of time to do so, waives that party's right to challenge on appeal any unobjected-to factual finding(s) or legal conclusion(s) the District Judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1; 28 U.S.C. § 636(b)(1).


Copies furnished to:
Honorable Thomas P. Barber, United States District Judge
Counsel of record
Any unrepresented party